# United States District Court

FILED by _____ D.C.

MAY 1 8 2000

CLERK U.S. ___ ___
S.D. OF FLA. FT. LAUD.

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

V.

SACHA-GUY POLYNICE

## CRIMINAL COMPLAINT

CASE NUMBER: $00-4114-BSS$

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about   May 17, 2000   in   Broward   county, in the

___Southern___ District of ___Florida___ defendant(s) did, (Track Statutory Language of Offense)

knowing possess a machine gun, and did knowingly receive and possess a silencer transferred to him in contravention of Title 26, United States Code, Sections 5812, 5861(b), and 5871,

in violation of Title __18__ United States Code, Section(s)  922(o) and Title 26, U.S.C. §§ 5812, 5861 and 5871

I further state that I am a(n)  __Special Agent, ATF__  and that this complaint is based on the following
                                     Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof:   [x] Yes  [ ] No

Signature of Complainant
Vincent Curry, Special Agent
Alcohol, Tobacco and Firearms

Sworn to before me, and subscribed in my presence,

May 18, 2000                                        at  Fort Lauderdale, Florida
Date                                                    City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                      Signature of Judicial Officer

**AFFIDAVIT**

I, Vincent P. Curry, being duly sworn, deposes and says:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms (ATF), and have been so employed for approximately one (1) year. Prior to my employment with the ATF, I was a Special Agent with the Florida Department of Law Enforcement (FDLE) for two (2) years. Prior to the aforementioned, I was employed by the Maryland State Police for nine and one-half years and assigned to the Bureau of Drug and Criminal Enforcement. Currently I have been assigned to the Broward County High Intensity Drug Trafficking Area (HIDTA) Task Force consisting of various state and local agencies. I have learned the following information in my official capacity by first hand observations, by receiving information from other law enforcement officers involved in this investigation or by receiving information from confidential sources.

2. On April 10, 2000, Detective Clay Barrett of the Fort Lauderdale Police Department requested the assistance of the Bureau of Alcohol, Tobacco & Firearms regarding a confidential informant herein referred to as CI, who was

1

approached by a male known only to him/her as SACHA. SACHA however was later identified as **SACHA-GUY POLYNICE**. Detective Barrett further advised that the CI stated that **POLYNICE** was inquiring about purchasing twenty or more firearms.

3. On April 12, 2000, Detective Barrett received a telephonic page from the CI. Detective Barrett who was now acting in an undercover capacity, returned the telephone call and was advised that **POLYNICE** was present. Detective Barrett, who had been described as a firearms trafficker to **POLYNICE** by the CI, requested to speak with **POLYNICE**. **POLYNICE** got on the phone and immediately asked Detective Barrett how much the firearms he had would cost. After advising POLYNICE that it would depend on how many he purchased, POLYNICE asked to meet with Detective Barrett the following day.

4. On April 14, 2000, Detective Barrett met with **POLYNICE** and the CI at the Burger King restaurant located at 666 W. Broward Blvd. Ft. Lauderdale, FL 33312. During the recorded meeting, Detective Barrett advised **POLYNICE** that he had the following weapons available for sale:

·. Four (4) 9mm Glock handguns.

·. Three (3) 9mm Beretta handguns.

2

- Twenty (20) .25 cal. Lorcin handguns.
- Twelve (12) .45 cal. MAC-11's, one of which was a machine gun.
- One (1) 9mm UZI machine gun.

5. **POLYNICE** indicated that he wanted to purchase all of the firearms that were mentioned and added that he wanted rifles also. **POLYNICE** added that he was going to send the weapons he purchased to Jamaica. He further stated that the he needed the firearms by the following week so that he could give them to his courier for delivery.

6. Between April 14, 2000, and April 21, 2000, Detective Barrett and **POLYNICE** had numerous taped phone conversations in regards to **POLYNICE'S** interest in purchasing stolen firearms, to include pistols, machineguns and silencers.

7. On May 9, 2000, Det. Barrett contacted **POLYNICE** in regards to his previously stated interest in purchasing firearms. At this time, **POLYNICE** advised that the intended purchaser of the firearms they had previously discussed had purchased the firearms from another source.

8. On May 16, 2000, Det. Barrett contacted **POLYNICE**. During this conversation, **POLYNICE** ~~inferred~~ [implied / rec] that he was acting as a broker and that he knew someone who wanted to purchase two handguns and a MAC-11 machine gun with a

3

silencer. **POLYNICE** further requested that Det. Barrett meet with him that night to complete the transaction. Det. Barrett then advised **POLYNICE** that he couldn't complete the transaction that night however, he could arrange it for the following day May 17, 2000.

9. On May 17, 2000, Det. Barrett contacted **POLYNICE** and advised him that the transaction could be arranged. Det. Barrett further quoted him a price of $1,200.00 for the two handguns and MAC-11 machine gun with silencer which Det. Barrett represented were stolen merchandise. **POLYNICE** agreed with the price and a meeting location was arranged. Det. Barrett advised **POLYNICE** that he would meet him at the same Burger King Parking lot where they first met.

10. On May 17, 2000, **POLYNICE** and a black male, later identified as Dennis Black, were observed waiting in the Burger King parking lot. Det. Barrett then met with **POLYNICE** in the parking lot. Detective Barrett and **POLYNICE** re-negotiated the price for the purchase of one Glock pistol and a Mac-11 machine gun with silencer.

11. Det. Barrett then instructed **POLYNICE** to accompany him across the street where the firearms were being maintained in the trunk of a vehicle occupied by ATF Special Agent Steve McKean, who was also acting in an undercover capacity. **POLYNICE** directed Black to drive their vehicle

4

across the street and he and Detective Barrett walked across the street to the Walgreens parking lot. **POLYNICE** then inspected the weapons at the trunk of the vehicle. **POLYNICE** screwed in the silencer on the MAC-11 and handled both handguns.

12. Detective Barrett and **POLYNICE** then entered Special Agent McKean's vehicle. In the presence of Special Agent McKean, **POLYNICE** paid Detective Barrett $790.00 for one Glock pistol and the Mac-11 machine gun with silencer. **POLYNICE** and Detective Barrett then exited the vehicle and again inspected the firearms. **POLYNICE** took possession of the firearms and signaled to Black to drive his vehicle over to the area of Special Agent McKean's vehicle. At this time **POLYNICE** observed members of the arrest team and attempted to flee the area on foot. A short foot pursuit ensued at which time he was apprehended.

13. The MAC-11 machine gun and silencer that were purchased by **POLYNICE** are registered to the Bureau of Alcohol, Tobacco and Firearms, thus the firearms are not registered to **POLYNICE** in the National Firearms Registration and Transfer Record.

14. A National Firearms Act records search was also conducted which revealed that there were not any firearms or silencers registered to **POLYNICE** in the National Firearms

5

Registration and Transfer Record.

15. The MAC-11 machine gun purchased and possessed by **POLYNICE** has been previously determined to be a "machine gun" as defined in the National Firearms Act.

16. The silencer purchased and possessed by **POLYNICE** has been previously determined to be a silencer as defined in the National Firearms Act.

**FURTHER AFFIANT SAYETH NAUGHT**

VINCENT CURRY, SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO
and FIREARMS

Sworn and subscribed to before me this 18th day of May, 2000 at Fort Lauderdale, Florida.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

6